**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Miami Division

**Case No. 10-21511-CIV-MORENO/GOODMAN**

ROYAL BAHAMIAN ASSOCIATION, INC.,

    Plaintiff,
v.

QBE INSURANCE CORPORATION,

    Defendant.
_____/

**ORDER ON MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

THIS MATTER is before the Court on the Motion of Plaintiff, Royal Bahamian Association, Inc. ("Royal Bahamian"), to Compel Production of Documents with Incorporated Memorandum of Law. (7/13/2010, DE# 32.) Defendant, QBE Insurance Corporation ("QBE"), responded on July 22, 2010, and Royal Bahamian replied on July 29, 2010. (DE# 35, 44.) On August 24, 2010, the Court held a hearing on the motion. (DE# 64.) Having heard the arguments of the parties, reviewed the applicable filings and the law, and for the reasons stated below, this Court grants Plaintiff's motion in part and denies it in part.[1]

    **I.    Procedural Background**

This case involves the claims of an insured, Royal Bahamian, against its property insurer, QBE, relating to claimed damage of its insured property allegedly caused by Hurricane Wilma in 2005. The motion now before the Court relates to documents

---

[1] QBE's currently pending motion for a protective order (DE# 38, 7/26/2010) will be addressed in a separate order. As reflected in that other order, the Court is granting QBE's motion for a protective order. Consequently, notwithstanding this Order, which grants, in part, the motion to compel against QBE, Defendant QBE need not produce documents responsive to the subpoena which Plaintiff served on FIU and categories 8-10 of the notice of taking deposition to Mendy Little. Those are the two discovery requests at issue in QBE's motion for protective order.

requested by a notice of deposition to QBE and a subpoena to Florida Intracoastal Underwriters ("FIU").[2]

By the time of the hearing, certain portions of the motion had become moot. This order will resolve the remaining dispute as to these requests: (a) whether QBE validly invoked the work-product doctrine to withhold documents created after June of 2006; (b) whether QBE and FIU must produce copies of any agreements between FIU, QBE, and/or each company's agents, under which services were provided relating to Royal Bahamian's claim; and (c) whether QBE and FIU must produce attorney-coverage opinions in QBE or FIU's possession analyzing the same form contract at issue in this litigation.

## II.     General Law Governing Discovery

Federal Rule of Civil Procedure 26(b)(1) provides that "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Court must construe this rule liberally to allow for the fullest discovery appropriate. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985); *Williams v. City of Dothan*, 745 F.2d 1406, 1415-16 (11th Cir. 1984). A court will sustain a discovery objection only where the requested material is irrelevant, privileged, or protected by the work-product doctrine. *Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D. N.C. 1978).

The work-product doctrine is specifically governed by Rule 26(b)(3), which provides that work-product material is discoverable only if a "party shows that it has

---

[2] At the hearing, QBE's counsel, Melissa Sims, explained that FIU is QBE's managing general agent in Florida, maintains all of QBE's records here and that her law firm represents FIU with regard to QBE-related matters. Therefore, while the motion to compel is technically directed only at QBE, the parties agreed that both QBE and FIU would produce documents should the Court grant Royal Bahamian's motion. The parties advised the Court that they construed the motion to compel as applying to both QBE and FIU. The Court will follow suit and generally refer to QBE and FIU collectively as QBE, unless otherwise appropriate.

substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

Because insurance companies ordinarily investigate a claim in contemplation of litigation, Courts use a special analysis when considering whether documents created prior to the initiation of litigation are privileged. *See generally Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 701 (S.D. Fla. 2007).

There is a rebuttable presumption that "documents or things prepared before the final decision on an insured's claim are not work product, and that documents produced after claims denial are work product." *Id.* (citing *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, No. 6:04-cv-1838-Orl-22JGG, 2006 WL 1733857, at *2 (M.D. Fla. 2006)). *Accord Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991). This presumption may be overcome "by specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced." *Harper*, 138 F.R.D. at 663. The insurer must demonstrate the connection to possible litigation concretely enough to assure a court that it is not simply trying to immunize from discovery its routine claims processing material. *Id.* at 662 (quoting *Schmidt v. California State Auto. Ass'n*, 127 F.R.D. 182, 184 (D. Nev. 1989).

III. Analysis

   a. QBE Documents Produced After June of 2006 Are Not Exempt From Discovery Under the Work-Product Doctrine

QBE contends that it began to anticipate litigation over this claim in June of 2006, when a Royal Bahamian board member on its roof committee allegedly threatened litigation to its adjuster, Chuck Dodd. (DE# 35, n. 3.) In support of its contention, QBE primarily relies on Dodd's July 24, 2006, report. In its entirety, this report states:

> Jack referred the committee to me and I have been trying to get a consensus regarding the roof, but some members feel they are not being treated fairly and at least one of them has recommend suing.

(DE# 65-2, 8/24/10.)   QBE also pointed to letters from 2007-08 that detail Royal Bahamian's failure to respond to certain requests for information. (DE# 35-5.)  While QBE believes the litigation threat alone is enough to justify application of the work-product doctrine for documents created from June of 2006 onward, it believes that Royal Bahamian's alleged failure to respond to information requests, a purported breach of the insurance agreement, bolsters its work product claim.

The Court finds QBE has failed to rebut the presumption that documents produced after June of 2006 are not work product.  A single threat on an unknown date by an unidentified roof *committee* member (that was not even memorialized until a month afterward) does not constitute specific proof that QBE reasonably anticipated litigation as of that date.  Dodd's report does not pinpoint the date of the comment and does not even specifically identify this speaker as a member of Royal Bahamian's board.  Moreover, an actual recommendation by a single committee member to file a lawsuit presumably would have required the consensus of the other committee members, and the entire board then would have had to decide whether to act on this committee recommendation.

Therefore, the so-called litigation threat appears to be little more than an offhand comment from an unidentified committee member.  Even if the sole committee member unequivocally voiced his opinion to recommend litigation, QBE made no showing that other committee members shared the perspective or that the actual board of directors had a similar view.

At the hearing, QBE's own counsel stated that QBE routinely offers insureds the opportunity to cure technical breaches of their contracts by complying with their obligations to produce claim-related information. At a minimum then, the earliest examples of Royal Bahamian's failure to respond to information requests identified by QBE also fails to support QBE's position.

It is clear that as of at least March 19, 2009, (DE# 44-1)[3] QBE continued to actively evaluate Royal Bahamian's claim, and Royal Bahamian did not file suit until 2010, nearly four years after the purported threat to do so. There is simply insufficient information to suggest that QBE reasonably anticipated litigation in June of 2006. *See Milinazzo*, 247 F.R.D. at 701 (letter from insured's counsel threatening litigation in thirty-days if coverage request not resolved does not rebut presumption where parties engaged in lengthy negotiations for six months thereafter). Royal Bahamian did not file suit until April 2, 2010, which seems inconsistent with a *bona fide* threat (as opposed to an impulsive, emotional comment by a lone committee member) to file a lawsuit in June 2006.

Therefore, application of the general rule, which generates a presumption which QBE failed to rebut, is that QBE would not be entitled to work product protection until the date it denied the claim. But that rule would lead to illogical results here, because QBE did not formally deny the claim until *after* Royal Bahamian filed its lawsuit. Consequently, in a logical and necessary modification to the general rule, the Court finds that QBE is entitled to work product-protection from the date suit was filed -- April 2, 2010 --  rather than the date QBE denied Royal Bahamian's claim (May 5, 2010). It would defy common sense to blindly apply the general rule and to determine that QBE did not reasonably anticipate litigation until a month after suit was already filed. QBE is therefore ordered to produce all responsive documents it withheld under a claim of work product protection that were created before May 5, 2010. QBE need not produce documents which were withheld under claims of *both* work product and the attorney-client privilege.

---

[3] While the difference is immaterial to this order, Royal Bahamian discusses a March 9, 2010, letter, identified as Exhibit A to its motion, within the body of the motion. The letter actually attached as Exhibit A is dated March 19, 2009. (DE# 44-1.)

### b. QBE Does Not Need to Produce Its Contracts With FIU and Other Agents

Royal Bahamian seeks to compel production of any agreements between FIU, QBE, and/or each company's agents in order to determine if any other parties were involved in the adjustment of its claim, and also for the purpose of demonstrating that QBE's fraud defense is a "farce." (DE# 32, pp. 6-7.) Royal Bahamian believes that "QBE failed to make a reasonable effort to determine the amount of this loss." (DE# 44, p. 5.) At the hearing, QBE clarified that its fraud defense was premised on its understanding that an insured's gross inflation of damages constitutes fraud. QBE contends that Royal Bahamian grossly inflated the damages claims and improperly tried to include property which was not even damaged by the hurricane. QBE also contends that this suit is solely about Royal Bahamian's Hurricane Wilma damages and therefore believes that these agreements are irrelevant.

The Court agrees with QBE.

At best, the information in these agreements is collateral to the main issue in this case and can likely be obtained through other available and less-intrusive avenues of discovery. *See Buckely Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 WL 2645680, at *5 (S.D. Fla. 2008 ("financial or contractual documents between an insurer and its insurance adjusting or managing agency, do not fall under the specific processing and analysis category related to the insured's claim that is generally discoverable"). For instance, Royal Bahamian could have propounded interrogatories asking QBE to identify any other companies involved in the adjustment of its specific claim here and to explain the basis of its claim denial.

The Court understands that Royal Bahamian suspects QBE does not have a sound basis for its fraud defense because it contends that QBE failed to satisfactorily investigate Royal Bahamian's damages. The Court, however, is not convinced that

these agreements are pertinent enough to justify such an intrusive request where this information is available by much less intrusive methods and is likely collateral to the main issues in this lawsuit. Royal Bahamian's motion to compel production of any agreements between FIU, QBE, and/or each company's agents is therefore denied.

### c. QBE Only Needs to Produce Opinion Letters Written By Lawyers in Other Cases That Specifically Relate to Royal Bahamian's Claim or Were Read by Any QBE Agent in Connection With Royal Bahamian's Claim

In request number 14 of its subpoena to FIU, Royal Bahamian requested "Copies of all attorney coverage opinions" obtained by QBE, FIU, or either's agents "referring to coverage for windows and sliding glass doors under a QBE policy in effect during 2004 and/or 2005." (DE# 32-2, p. 5.) QBE initially responded to this request by stating that no such opinions existed with regard to this particular claim. (DE# 35, p. 8.) At the hearing, Royal Bahamian clarified that it seeks these opinions with regard to *any* claim involving the same form of contract under which it obtained insurance from QBE. Based upon his familiarity with QBE's litigation strategy in other lawsuits, Royal Bahamian's counsel believes that QBE possesses not only opinions from its own attorneys but also opinions drafted by attorneys for different insured plaintiffs in *other* cases.

Royal Bahamian's motion is denied to the extent that it seeks any coverage opinions drafted for QBE by its own attorneys. Any such opinions are protected by the attorney-client privilege and Royal Bahamian has not demonstrated the existence of any exception in this case. *See generally Milinazzo*, 247 F.R.D. at 697 (discussing attorney-client privilege in the insurance context).

To the extent Royal Bahamian seeks opinions held by QBE that were drafted by attorneys for insureds in other cases, the Court's determination is more complex. Royal Bahamian is not entitled to all such opinions QBE may possess. Attorney coverage opinions are based on each case's individual facts and are generally irrelevant to an

analysis of a different claim.  However, if any such opinion letters are in QBE's claim file for Royal Bahamian's claim in *this* case, or if any QBE or FIU agent reviewed any such opinion with regard to Royal Bahamian's specific claim here, then such an opinion would be relevant in this case (because QBE or its agents would have reviewed and/or relied upon it **for this particular claim)** and should be produced.

Consequently, QBE is ordered to produce all attorney coverage opinions referring to coverage for windows and sliding glass doors under a QBE policy in effect during 2004 and/or 2005 in its possession that were drafted by attorneys for different insured plaintiffs in other cases **and that are in its Royal Bahamian claim file** or were **reviewed** by any of its agents **with regard to Royal Bahamian's specific claim.**

### IV.   Conclusion

Royal Bahamian's motion to compel is granted in part and denied in part.  QBE shall produce the following within ten days of this order:

(a) All documents previously withheld under the work-product doctrine that were created before May 5, 2010 (and which are not also subject to an attorney-client privilege claim);

(b) All attorney coverage opinions referring to coverage for windows and sliding glass doors under a QBE policy in effect during 2004 and/or 2005 in its possession that were drafted by attorneys for different insured plaintiffs in other cases and that are in its Royal Bahamian claim file or were reviewed by any of its agents with regard to Royal Bahamian's claim.

DONE AND ORDERED, in Chambers, in Miami, Florida, this 30th day of August, 2010.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Federico A. Moreno
All counsel of record