**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Miami Division

**Case No. 10-21511-CIV-MORENO/GOODMAN**

ROYAL BAHAMIAN ASSOCIATION, INC.,

    Plaintiff,
v.

QBE INSURANCE CORPORATION,

    Defendant.
_____/

**SUPPLEMENTAL ORDER ON MOTION TO COMPEL RESPONSES TO ITS REQUESTS FOR PRODUCTION NUMBERED 5, 6, 8, 9 AND 11**
**(AFTER *IN CAMERA* REVIEW OF DOCUMENTS AND SUR-REPLY MEMORANDUM)**

THIS MATTER is again before the Court on the Motion of Plaintiff, Royal Bahamian Association, Inc. ("Royal Bahamian"), to Compel Responses to Its Requests for Production Numbered 5, 6, 8, 9, and 11.[1] (DE# 60, 8/18/2010.) This Court previously entered an Order on the motion (DE# 110). In that Order, I directed Defendant, QBE Insurance Corporation ("QBE"), to submit certain documents (*i.e.*, those concerning requests 8, 9 and 11) under seal for *in camera* review. I also gave QBE the opportunity to submit an additional memorandum on the issue of whether communications with Chuck Dodd, an independent adjuster, are protected by the attorney-client privilege.

QBE submitted the privileged documents under seal (DE# 113, 114 and 116) and also submitted an additional memorandum (DE# 115) and an affidavit (DE# 118-1).[2]

---

[1] All non-dispositive pretrial motions have been referred to me for decision by the Honorable Federico Moreno, Chief Judge of the United States District Court for the Southern District of Florida. (DE# 37, 7/26/2010; 40, 7/28/2010.)

[2] QBE submitted the affidavit of Timothy O'Brien, senior claims representative of Florida Intracoastal Underwriters ("FIU"), the managing general agent for QBE on this claim.

1

Accordingly, the discovery issues remaining from the motion to compel (DE# 60) are now ripe for review.

Having reviewed the applicable filings and the law, and for the reasons stated below, this Court denies the remaining portions of Royal Bahamian's motion to compel. Accordingly, QBE need not produce its operating procedures for handling claims (categories 8 and 9 of Royal Bahamian's Request for Production) or its communications with Mr. Dodd (encompassed by category 11 of the Request for Production).

### I.   Procedural Background

This case involves the claims of an insured, Royal Bahamian, against its property insurer, QBE, relating to claimed damage of its insured property allegedly caused by Hurricane Wilma in 2005. The motion now before the Court relates to certain documents requested by Royal Bahamian from QBE in a request for production served on June 1, 2010. (DE# 60, p. 2.) Other documents at issue in the motion were the subject of earlier Court orders. Only those concerning categories 8, 9 and 11 remain pending.

### II.   General Law Governing Discovery

Federal Rule of Civil Procedure 26(b)(1) provides that "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Court must construe this rule liberally to allow for the fullest discovery appropriate. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1546 (11th Cir. 1985); *Williams v. City of Dothan*, 745 F.2d 1406, 1415 (11th Cir. 1984). A court will sustain a discovery objection only where the requested material is irrelevant, privileged, or protected by the work-product doctrine. *Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D. N.C. 1978). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED R. EVID. 401.

While the scope of permissible discovery may vary depending on the precise facts of each case, there is a significant amount of consistent case law delineating generally what type of information is discoverable in an insurance coverage dispute. *See generally, e.g., Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691 (S.D. Fla. 2007) (discussing discoverability of underwriting files, claims handling guidelines, and standard operating procedures within insurance coverage context). *See also Tolz v. Geico Gen. Ins. Co.*, No. 08-80663-CIV, 2010 WL 298397, at * 3 (S.D. Fla. Jan. 19, 2010); *Kennedy v. Provident Life*, No. 07-81218-CIV, 2009 WL 3048683, at * 2 (S.D. Fla. Sept. 18, 2009); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988, 2008 WL 2645680, at 3-5 (S.D. Fla. June 26, 2008); *Essex Builders Group v. Amerisure Ins. Co.*, No. 6:04-cv-1838-Orl-22JGG, 2006 WL 1733857 (M.D. Fla. June 20, 2006); *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655 (S.D. Ind. 1991).

### III. Analysis

#### a. Requests for Production Number 8 and 9 (Procedures)

Requests for production 8 and 9 ask for similar documents. Request number 8 seeks all of QBE's procedures and/or guidelines regarding the adjustment of hurricane property damage claims in effect from 2005 through the present. Request number 9 seeks all policies, procedures, and/or guidelines issued by QBE to its claims personnel in effect from 2005 through the present regarding the interpretation of the policy, or any portion thereof. (DE# 60, pp. 4-7.) QBE originally objected to both of these requests on the grounds that the information is irrelevant in a first party insurance coverage breach of contract action and because the requests seek confidential, trade-secret and proprietary information. (*Id.*)

After noting that it seemed unlikely that these documents would be relevant in a first party claim for failure to pay under an insurance contract, the Court acknowledged

3

that it is *conceivable* that they might be discoverable. Accordingly, the Court directed QBE to produce the documents under seal for *in camera* review.

I have reviewed the documents and I have determined that Plaintiff's discovery theory (which was speculative in the first place) is inapplicable. Specifically, Royal Bahamian argued that it needs to review the documents to see how QBE normally adjusts claims in order to determine whether QBE actually suffered prejudice from Plaintiff's alleged failure to comply with its contractual obligation to assist QBE's claim investigation. Plaintiff also argued that it must know how QBE ordinarily adjusts claims in order to assess QBE's ninth affirmative defense of fraud and concealment.

The documents I have reviewed *in camera* would not assist Royal Bahamian in striving to accomplish either of the two litigation goals it proffered. Therefore, the motion to compel is denied as to categories 8 and 9 of the Request for Production.

### b. Request Number 11 (Files of Any Individual or Entity Hired or Retained by QBE to Investigate, Inspect, and/or Adjust the Claim and/or Premises)

Request for production 11 seeks the "file(s) including, but not limited to, reports, surveys, appraisals, etc. of any individual or entity hired or retained by QBE to investigate, inspect and/or adjust the Claim and/or the Premises, including but not limited to those of Melissa Sims." (DE# 60, p. 8.) The only remaining portions of this category which needs to be resolved are documents created before April 2, 2010 which are the subject of QBE's claim of attorney-client privilege and those concerning Royal Bahamian's contention that QBE waived the attorney-client privilege by sharing documents with Chuck Dodd.

To establish entitlement to the attorney-client privilege in Florida, a corporation must demonstrate the following elements:

> (1) the communication would not have been made but for the contemplation of legal service;

4

> (2) the employee making the communication did so at the direction of his or her corporate superi- or [sic];
>
> (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
>
> (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;
>
> (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Milinazzo*, 247 F.R.D. 691 (quoting *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994)).

I have reviewed the *in camera* documents and determined that QBE's attorney-client privilege claim is valid and that the privilege was not waived by communications to and from Mr. Dodd.

As QBE has outlined in its sur-reply and in Mr. O'Brien's affidavit, FIU is QBE's managing general agent. Moreover, QBE has no direct employees who serve as field adjusters in Florida. As a result, FIU retained Mr. Dodd, of Interclaim, Inc. to serve as its independent adjuster for Royal Bahamian's claim. QBE involved Mr. Dodd in communications with counsel in order to assist it in protecting its legal rights. Indeed, QBE's outside counsel, at the Berk, Merchant & Sims firm, are frequently shown as receiving copies of communications to and from Mr. Dodd.

Because Mr. Dodd is not a QBE employee, Royal Bahamian, citing *Southern Bell Telephone & Telegraph Co. v. Deason*, 632 So.2d 1377 (Fla. 1994), argues that QBE waived the attorney-client privilege by disseminating the documents "beyond those who 'because of the corporate structure, need to know [the communication's] contents." (DE# 90, at pp. 8-9).

I do not find this argument persuasive.

As a fundamental backdrop for this analysis, "in general, agents and subordinates working under the direct supervision and control of the attorney are included within the scope of the attorney-client privilege." Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine (4th ed., ABA Section of Litigation). Therefore, it is no surprise that the attorney-client privilege applies to communications between a law firm and an independent contractor retained by a partnership to help it develop real estate. *In re Bieter Co.*, 16 F.3d 937, 939-40 (8th Cir. 1994).

According to Mr. O'Brien's affidavit, Mr. Dodd was charged with the responsibility of, *inter alia*, communicating with the insured, Royal Bahamian -- a fact which militates against a finding of waiver. *Scott Paper Co. v. United States,* 943 F. Supp. 489, 499 (E.D. Pa.), *aff'd* 943 F. Supp. 501 (E.D. Pa. 1996) (privilege extends to communications between attorneys and all agents or employees authorized to act or speak for the organization). *Cf. United States v. Kovel,* 296 F.2d 918 (2d Cir. 1961) (privilege extends to accountant working for an attorney). *See generally United States v. Schwimmer,* 892 F.2d 237 (2d Cir. 1989) (information given to accountant hired by a codefendant's attorney was privileged).

QBE relies on *Tyne v. Time Warner Entertainment Co., L.P.*, 212 F.R.D. 596 (M.D. Fla. 2002) to support its position that communications with Mr. Dodd did not generate a waiver of the attorney-client privilege. In that case, the Plaintiffs argued that Defendant Warner Brothers waived the privilege by voluntarily distributing documents to employees of the codefendant studios. Noting that the codefendant studios were, in effect, involved in the movie project as a joint venture with Warner Brothers, the Court held that disclosure to individuals with a common interest does not create a waiver.

The analysis used by the *Tyne* Court applies with equal vigor to the instant case. In Tyne, the magistrate judge explained that advice from the Warner Brothers legal

department would be "useless" to Warner Brothers if the advice could not be disseminated "to the few key individuals who were intimately involved" with the project. 212 F.R.D. at 600.  Likewise, QBE would be handcuffed in its ability to evaluate the claim if its field adjuster could not communicate with QBE's outside counsel without waiving the attorney-client privilege.  If, as in *In re Copper Market Antitrust* Litigation, 200 F.R.D. 213, 219-220 (S.D.N.Y. 2001), the attorney-client privilege extends to a *public relations firm* which consulted with the client's attorneys on how to handle issues involving litigation matters, then surely communications with an insurer's field adjuster remain privileged.

### IV.   Conclusion

Royal Bahamian's motion to compel categories 8, 9 and 11 of its Request for Production of Documents is denied.

DONE AND ORDERED, in Chambers, in Miami, Florida, this 20th day of September, 2010.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
The Honorable Federico A. Moreno
All counsel of record