**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Miami Division

**Case No. 10-21511-CIV-MORENO/GOODMAN**

ROYAL BAHAMIAN ASSOCIATION, INC.,

      Plaintiff,

v.

QBE INSURANCE CORPORATION,

      Defendant.

_____/

### <u>CORRECTED PRELIMINARY ORDER ON MOTIONS *IN LIMINE*[1]</u>

In a disappointing development, this matter is before the Court in connection with *procedural* issues concerning eight (8) separate motions *in limine* filed by Plaintiff, Royal Bahamian Association, Inc. ("Royal Bahamian") (DE## 73, 74, 75, 76, 77, 78, 79 and 80) and three (3) motions *in limine* filed by Defendant, QBE Insurance Corporation ("QBE"). (DE## 70, 71 and 72).

As outlined below, neither Royal Bahamian nor QBE complied with the local rule requiring a good faith effort to resolve issues before filing motions.  In addition, their counsel filed certifications (attesting to purported compliance with the local rule) which, at best, were questionable because neither Royal Bahamian nor QBE, by any stretch, actually made reasonable, good faith efforts to confer about any of the motions.

### <u>THE RULE</u>

Local Rule 7.1(a)(3) is entitled "Pre-filing Conferences Required of Counsel." With certain exceptions not applicable here, the rule requires movant's counsel to "confer (orally or in writing)" or "make **reasonable** effort to confer (orally or in writing)" with all parties "in a **good faith** effort to resolve by agreement the issues to be raised in

---

[1]  This corrected version does not in any way substantively change or modify any issue addressed in my original order, which was uploaded last night.

the motion." (emphasis supplied). The rule also requires other counsel to "**cooperate and act in good faith** in attempting to resolve the dispute." (emphasis supplied).

The rule requires the movant to certify that one of two possible scenarios occurred: (1) that movant's counsel did, in fact, confer but was unable to resolve the issues, or (2) that movant's counsel made "reasonable efforts" to confer but has been unable to do so. If movant uses the latter type of certification, then movant's counsel must "identi[fy] with specificity" the efforts taken in the unsuccessful attempt to confer.

Finally, the rule provides that failure to comply "may be cause" to "grant or deny the motion and impose on counsel an appropriate sanction," which "may include an order to pay the amount of the reasonable expenses incurred because of the violation."

## THE CERTIFICATIONS – AND THE ACTUAL FACTS UNDERLYING THEM

In each of its eight motions in limine, Plaintiff's counsel submitted what amounts to a *hybrid* type of certification, including elements of both the first type and the second type of required certification. Under the local rule, a movant must, before filing a motion, either have an actual, good faith conference, which was unsuccessful because the issue could not be resolved, *or* make unsuccessful efforts to have the conference and then explain what efforts were taken (and which resulted in an inability to have a conference at all). Plaintiff's certifications did not comply with either type of permissible certification.

Instead, Plaintiff's counsel "certified," under the title "Local Rule 7.1(a)(3) Certification," that "it [sic] has attempted to communicate with Defendant's counsel to resolve the issues contained within this motion, but has been unable to resolve same." Royal Bahamian did not, in any of its certifications for the eight motions, provide any detail about the attempts it purportedly took to resolve the issues before filing the motions. *See Andre v. Gonzales*, No. 10-20536-CV, 2010 WL 3585238, at *2 (S.D. Fla. Sept. 7, 2010) (certification of good faith effort to attempt to confer under Local Rule 7.1(a)(3) was insufficient because moving party gave no specific information about these

2

efforts in her certification).  Obviously, if Royal Bahamian never conferred (because it only "attempted" to communicate), then it would not have been able to resolve any of the 8 or more disputes at issue in the motions.

Unlike Royal Bahamian's certifications, which represented that Plaintiff "attempted" to communicate, QBE's certifications affirmatively (and incorrectly) represented that QBE "has" consulted with opposing counsel.  (DE## 70, 71, 72).[2]

Had QBE not raised the issue of compliance with the local rule requirement for good faith efforts to confer in its responses to Royal Bahamian's eight *in limine* motions, the Court would have accepted the certifications at face value and not started to question their veracity.  But what would have been a relatively routine review of the substance of the motions without a second thought about the certifications turned into a far different assessment because of QBE's responses.

In its responses to all eight motions, QBE contends that Royal Bahamian failed to comply with Local Rule 7.1(a)(3) because Royal Bahamian's only effort to confer was "to send an email at 5:43 p.m. on August 25, 2010 . . . asking 'whether Defendant agrees to any of the motions, in which case filing would be unnecessary.'"  (DE## 102, 103, 104,

---

[2]        In order to "confer," a movant must have a give-and-take exchange with opposing counsel.  Sending an email and demanding an immediate or near-immediate response and then filing a motion before having an actual substantive discussion with opposing counsel does not amount to a conference or consultation.  Instead, it is a one-way missive.  *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, No. 07-61879, 2008 WL 5427785, at *1 (S.D. Fla. Dec. 30, 2008) ("Simply sending a letter without further follow-up does not constitute the type of effort to engage in a pre-filing conference anticipated by Local Rule 7.1").  *See also Williams v. Board of Cnty. Comm'rs of the Unified Gov't of Wyandotte Cnty. & Kan. City, Kan.*, 192 F.R.D. 698, 700 (D. Kan. 2000) (noting that under Federal Rule of Civil Procedure 37 and District of Kansas Local Rule 37.2 a "reasonable effort to confer means more than mailing a letter to opposing counsel.  It requires that counsel converse, confer, compare views, consult, and deliberate") (internal citations and quotations omitted); *Conference Definition*, MERRIAM-WEBSTER       ONLINE       DICTIONARY,       http://www.merriam-webster.com/dictionary/conference?show=0&t=1285596373 (last visited Sept. 27, 2010) ("a meeting of two or more persons for discussing matters of common concern . . . a usually formal interchange of views").

105, 106, 107, 109).[3]  QBE contends that Royal Bahamian allowed it only one hour and 39 minutes to discuss the issue with co-counsel and its client, after business hours, before it started to file its eight motions *in limine*.[4]  QBE attached the email as an exhibit to each of its responses to the eight *in limine* motions.  The email explained that the 8 motions which Plaintiff planned to file were attached (albeit without supporting exhibits).  According to the Court's CM/ECF log, Royal Bahamian uploaded its first motion to compel at 7:21 p.m. on August 25, 2010.

Accusing Royal Bahamian of not making "a good faith attempt to confer on the issues raised in any of its motions in limine," QBE urged the Court to summarily deny all of Plaintiff's *in limine* motions for failure to comply with the local rule and for only "'going through the motions' before filing" the motions. (DE## 102, 103, 104, 105, 106, 107 109.)

Prompted to consider the *bona fides* of Royal Bahamian's certifications, I directed Royal Bahamian to explain, in its replies, whether the timing and chronology outlined in QBE's responses are accurate and whether it ever discussed (orally or in writing) the issues raised in the eight motions before it sent its succinct email memo on August 25, 2010. (DE# 122.)  In addition, I asked Royal Bahamian to advise me if there were any discussions which predate the email sent at 5:43 p.m. on August 25, 2010, and, if so, to specify the circumstances and provide detail and supporting exhibits, such as emails and letters.  I also urged Royal Bahamian to discuss any legal authority which construes the circumstances outlined above as a reasonable pre-filing effort to confer.

In its reply (DE# 123), Royal Bahamian confirms the accuracy of the representations which QBE made about the timing and chronology of Plaintiff's eight

---

[3]     QBE filed one combined response to two of Royal Bahamian's separate *in limine* motions.  (DE## 74, 76, 103.)

[4]     QBE also filed substantive responses to the *in limine* motions.

motions.  It concedes that it "did not explicitly discuss the issues raised" in the motions *in limine* with QBE's counsel before the after-business-hours email which attached drafts of the eight motions.  It did not cite any authority suggesting that its pre-filing activities met the local rule's "thou shall confer" commandment.

However, Royal Bahamian submits that its actions were reasonable, under the circumstances, because of "prior dealings" with QBE's counsel and "the nature of QBE's effort to confer in connection with its *own* motions in limine."  (emphasis supplied).

In effect, Royal Bahamian's position is:  "Well, QBE violated the rule first when it filed its motions in limine with bad faith certificates of efforts to confer, so we figured it was ok to commit a similar violation."

In particular, Royal Bahamian argues that QBE's "sole attempt" to confer was "an equally succinct email memo sent at 5:59 p.m." on August 24, 2010 (the day before Royal Bahamian shipped over by email eight motions, along with a request for QBE's agreement and a warning that the motions would be filed in the absence of an agreement).  According to Royal Bahamian (which submitted the email from QBE's counsel as an exhibit), QBE's after-business-hours email "merely provided one-sentence 'outlines' of each of its proposed motions" and noted that it would file the motions if Royal Bahamian did not agree to the relief requested in the motions.  Royal Bahamian then pointed out that QBE filed the motions the very next day, before "receiving a response from Royal Bahamian's counsel and without making any further attempt to contact Royal Bahamian's counsel."  QBE did, in fact, file the motions the very next day and acknowledges that Plaintiff "never responded" to its email outlining its proposed motions *in limine*.  (DE# 123-2.)

Royal Bahamian suggests (fairly directly) (DE# 123) that its conduct vis-à-vis the local rule conference requirement was less problematic than QBE's actions because its "proposed motions in limine were provided" so that "QBE could see the full breadth of

the proposed motions."  QBE, in contrast, provided only brief summaries of its intended motions, which presumably did not provide Royal Bahamian with the same opportunity for a "full breadth" analysis.

Royal Bahamian then urges the Court to "consider QBE's counsel's parallel conduct" as part of its analysis of what action, if any, to take "[**if**] the Court finds that Royal Bahamian's counsel failed to comply with Local Rule 7.1(a)(3)."  (emphasis supplied).[5]

## THE PRACTICAL CONSEQUENCES OF THE VIOLATIONS

Royal Bahamian and QBE both violated the local rule requirement to make a good faith effort to confer before filing a motion and to submit a certificate attesting to the effort as a precondition to filing the motion.  In one sense, Royal Bahamian's violation was slightly more egregious than QBE's violation because it directly created consequences – i.e., some of the motions turned out to be unnecessary, thereby requiring QBE to spend time, money and energy preparing superfluous responses. These types of consequences were not generated by QBE's violations.  But in another sense, QBE's violation was more troublesome because its certification was more inaccurate (i.e., it affirmatively - - but incorrectly - - certified that it had, in fact, conferred [or had a consultation] with Royal Bahamian about the substantive issues raised by the motions).

---

[5]      Given the number and volume of Royal Bahamian's *in limine* motions, the fact that it filed the motions less than two hours after sending drafts to QBE and Royal Bahamian's concession that it did not "explicitly" discuss the issues with opposing counsel before filing the motions, it is difficult to imagine how anyone could conclude that Royal Bahamian's counsel complied with the local rule.  Thus, there is no "if" at work here.  The Court *has* reached the conclusion that Royal Bahamian's counsel violated the local rule, as there is no other logical conclusion available under the facts.  The fact that QBE's counsel *also* violated the local rule does not erase Royal Bahamian's violation.

As to the magnitude of the violation, Royal Bahamian effectively waited until the eleventh hour before sending a large volume of motions, memoranda and exhibits to QBE's counsel, and it then began filing the motions less than two hours later.  QBE, on the other hand, waited a full day before filing its motions.[6]  As noted, Royal Bahamian's conduct caused QBE to spend time, money and energy responding to motions which turned out to be unnecessary.

Had Royal Bahamian complied with the local rule and made a good faith effort to confer, it would have learned that QBE did not, for all practical purposes, object to the relief being sought in three of the motions.  Specifically, QBE does not object to Royal Bahamian's Motion *in Limine* to Bar Any Evidence or Argument that Plaintiff Has the Burden to Prove That Damage Was *Not* Caused by Wear and Tear, Deterioration, or Any Other Excluded Cause of Loss (DE# 73) or its Motion *in Limine* to Bar Comparison of Hurricane Impact to Plaintiff's Buildings to Hurricane Impact to Other Buildings (DE# 74).  In addition, QBE says it does not plan to elicit testimony or commentary about the home residences of Plaintiff's counsel, which is the subject of Royal Bahamian's Motion *in Limine* to Bar Commentary that Plaintiff's Attorneys Are From Out-of-State (DE# 76). [Note:  As a technical matter, QBE asks that this third motion be denied as *premature*, rather than as moot, because, despite its lack of intention to raise the issue, it believes that the issue might arise at trial, such as if Royal Bahamian opened the door to this area by mentioning the board minutes which state that Royal Bahamian might encounter difficulty retaining trial counsel.  However, the significant point is that QBE is, for all practical purposes, agreeing to the relief sought by Plaintiff].[7]

---

[6]   According to the Court's CM/ECF system, QBE filed its first motion in limine at 5:07 p.m. on August 25, 2010 (approximately a day after it sent its email at 5:59 p.m. on August 24, 2010).  (DE# 123-1.)

[7]   As United States Magistrate Judge Robin Rosenbaum has cogently explained, Local Rule 7.1 serves the purpose not only of attempting to avoid unnecessary

Thus, as things evolved, two (and most likely three) of Royal Bahamian's *in limine* motions would not have been filed if it had conferred in good faith with QBE and given it more than a token amount of time to provide a position on the proposed motions. But these motions *were* filed (because the local rule's conference requirement was violated) by Plaintiff, and QBE was compelled to respond (both on procedural and substantive grounds).

## WHAT TO DO ABOUT THE VIOLATIONS

Counsel for Royal Bahamian and QBE both violated Local Rule 7.1(a)(3).  The local rule permits the Court to deny all of the motions.  QBE urges me to do so (for Royal Bahamian's motions).  QBE's counsel, who apparently does not follow one of Benjamin Franklin's better-known proverbs, asked for this severe consequence before QBE's *own,* similar violations were exposed.[8]

Although I could deny all 11 motions because of the local rule violations, I will exercise my discretion and not impose such an extreme penalty.

Denying the motions for failure to comply with the local rule would, in my judgment, unfairly penalize the parties, who presumably had no involvement in their counsel's violations.  Moreover, there is a substantial amount of evidence at issue in all

_____

expenditure of judicial resources resolving motions that are not opposed, but also to allow the Court to ascertain whether it should wait for a response from the opposing party before deciding the motion. *Wrangen*, 2008 WL 5427785, at *1.

[8]    Benjamin Franklin is widely known for the "people in glass houses should not throw stones" maxim.  Specifically, Mr. Franklin's version of this proverb was "don't throw stones at your neighbors', if your own windows are glass."  But  it seems that Mr. Franklin did not originate this popular saying.  In fact, the proverb has been traced back to Geoffrey Chaucer's "*Troilus and Criseyde,*" from 1385.  Almost 300 years later, George Herbert wrote, "Whose house is full of glass, must not throw stones at another." Answers.Com,       http://wiki.answers.com/Q/What_is_the_origin_of_'people_in_glass_ houses_shouldn't_throw_stones' (last visited September 27, 2010) (quoting GREGORY TITELMAN, RANDOM HOUSE DICTIONARY OF POPULAR PROVERBS & SAYINGS (1st ed. 1996)).

11 motions. I do not want to create a risk of reversible error based on evidence which should have been excluded, but which was admitted into evidence because counsel's local rule violations caused default denials of *in limine* motions which might have been granted on the merits.[9]   In addition, I do not want to saddle Chief Judge Federico A. Moreno, who will preside over the trial of this case, with potential problems flowing from pre-trial rulings impacting a significant amount of evidence.

On the other hand, I do not want to *ignore* these clear-cut violations of the local rule because it will send an improper and unfortunate message:  that lawyers can violate the local rules with impunity and not worry (at least in cases where motions have been referred to me) about adverse consequences.  Local rules have "the force of law" and should be followed. *Cheshire v. Bank of Am., NA*, 351 F. App'x. 386, 387 (11th Cir. 2009).

I acknowledge Royal Bahamian's point that QBE violated the local rule first and its implied request that I excuse or overlook its violation because of this "they-did-it-too" theme.  But I do not find this argument to be the least bit persuasive.

As our own Eleventh Circuit has held about the "But everyone else was doing it!" defense, "without inquiring as to what [a defendant in a civil case] would do if everyone else were jumping off a bridge, we recognize that precedent squarely precludes his claim." *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 (11th Cir. 2004).  *See also LaCrosse v. Commodity Futures Trading Comm'n*, 137 F.3d 925, 933 (7th Cir. 1998) (noting that the C.F.T.C. directly addressed and rejected a commodities broker's defense that "everyone else was doing it" and his related theory that this misconduct by others "somehow mitigated his illegal behavior"); *Ernst v. Sumner Group, Inc.*, 264 S.W. 3d 669, 673 (Mo. Ct. App. 2008) (the "puerile argument that 'everyone else is doing it' does not justify their

---

[9]     I am not suggesting that any of the motions should, in fact, be substantively granted.  I am providing hypothetical examples to illustrate a point.

violations [of sending sexual emails via a company internet account]"); *Ashby v. Farmers Ins. Co. of Or.*, 565 F. Supp. 2d 1188, 1214-15 (D. Or. 2008) (the "everyone did it" defense "is not an acceptable ground to absolve Defendants from liability" in the absence of reasonable justification for the conduct).[10]

Local Rule 7.1(a)(3) authorizes the Court to require counsel responsible for the violation to pay the amount of the reasonable expenses incurred because of the violation. In addition, 28 United States Code § 1927 authorizes the Court to order counsel to pay fees and costs under these circumstances.

Therefore, I am ordering the Royal Bahamian attorneys responsible for, and involved in, the inadequate efforts to confer and the questionable certificates to each pay $500 to QBE within 21 days of the entry of this Order. Likewise, I am ordering the QBE attorneys responsible for, and involved in, the inadequate efforts to confer and the inaccurate certificates to each pay $350 to Royal Bahamian within the same time period.

It is my intent that the responsible lawyers, and not their clients, pay these comparatively modest amounts, so I am also directing counsel to not charge their clients, either directly or indirectly, for the payments. Therefore, these amounts should not be listed as costs which the client is expect to pay or which the client would somehow be responsible for under a contingency retention arrangement. In addition, the law firms employing the lawyers obligated to make the payments should not reimburse, either directly or indirectly, the lawyers for the payments made under this Order.

---

[10]    For a more contemporary and musically-oriented version of the proverb counseling glass house residents to refrain from stone-throwing activities, see "Before You Accuse Me," a popular blues song written by Ellas McDaniel, better known as rock and roll icon Bo Diddley. That song, which contains the lyric, "before you accuse me, take a look at yourself," was also recorded and released by, among others, Eric Clapton, Creedence Clearwater Revival and Magic Slim.

I am using the plural word "lawyers" because I do not know for certain (and would not know, absent an evidentiary hearing) which lawyers were involved in the violations. It is certainly possible that more than one lawyer at each firm is responsible (in whole or in part) and would be obligated to make a payment.  If any lawyer approved of, or acquiesced in, the untimely and inadequate "efforts" to confer and/or the inaccurate or questionable certifications, then he or she is also responsible to make either the $500 or $350 payment.

Although the documents submitted as exhibits suggest the identities of the lawyers responsible for the violations, I am not going to assume that this is, in fact, the case.  There may be circumstances which have not yet been presented to me which might lead to the conclusion that other lawyers bear the responsibility.  For example, an associate may have expressed concern to a partner over the inadequate efforts to confer and the inability to submit good faith certificates and expressed reluctance about filing the certificates -- but been ordered by the partner to "just file them anyway."  If that were the case, then the partner, and not the associate, would be required to make the payment.  Alternatively, if the associate discussed the rule violation scenario with a partner or another lawyer in the firm but did not express concern over the violation, then he or she would be required to make the payment (as would the partner and/or other lawyers who participated in the discussion about violating the local rule requirement). And if a lawyer committed the violation without discussing any potential concerns with other lawyers in the firm, then that lawyer would be solely responsible for the payment.

Because I do not want to spawn collateral litigation over the amounts of the payments, I have selected amounts which I believe to be reasonable estimates of the amount of time which was unnecessarily spent responding to motions *in limine* or providing explanations about the procedural history. I believe that this is more efficient than requiring the parties to submit time sheets and expert affidavits about the

reasonableness of the attorney's fees and costs and litigating over the amounts.  I also consider these estimates to be extremely conservative and on the low side.

If any affected lawyer or party believes that they have not had a sufficient opportunity to be heard on either my underlying decision to require monetary payments or the amounts of those payments, then he or she (or it, if it is a party) can file a request for hearing and I will schedule a hearing, take testimony and entertain additional argument.  Any request for such a hearing should be made within ten (10) days of the entry of this Order.

All lawyers required to make payments shall submit an affidavit, confirming their obligation and the fact that payment has been made.  These affidavits will not be filed with the Clerk of the Court or in the public record.  Instead, they will be filed electronically in my personal CM/ECF filing box (not my court email address).  Counsel can obtain this CM/ECF address from my courtroom deputy, Michael Santorufo, by telephoning him at 305-523-5230.

If any attorney affected by this Order is ever asked questions (e.g., have you ever been sanctioned or disciplined by a court?) by anyone (e.g., by a judicial nominating commission, by a malpractice carrier, by a court asking about a *pro hac vice* application,[11] by a prospective employer), please note that I am intentionally and specifically designating the payment obligations as part of a fee-shifting mechanism, **not** as a disciplinary sanction.

---

[11]     Some of Royal Bahamian's attorneys are from outside of Florida and are appearing in this case under our District's *pro hac vice* procedure.  *Pro hac vice* admission is a privilege, not a right, and may be refused and, if initially granted, revoked. (7/16/2010, DE# 34.) For instance, the Plaintiff's attorney who sent the email to QBE's counsel less than two hours before the 8 motions began to be filed electronically is appearing in this case in a *pro hac vice* status. (*Id.*)

The Court will, at a later date and in separate orders, enter rulings on the merits of the *in limine* motions which are actually contested. I will also enter separate orders on those motions which are moot (because the other side is not objecting).

DONE AND ORDERED, in Chambers, in Miami, Florida, this 28th day of September, 2010.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Federico A. Moreno
All counsel of record