UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 10-21511-MORENO/GOODMAN

ROYAL BAHAMIAN ASSOCIATION, INC.,

    Plaintiff,

v.

QBE INSURANCE CORPORATION,

    Defendant.

_____/

### **OMNIBUS ORDER ON DEFENDANT'S MOTIONS IN LIMINE**

Pending before the Court are the Motions *in Limine* of Defendant, QBE Insurance Corporation, to Exclude Testimony of Gary Fye (DE# 70), to Prevent Plaintiff from Presenting Any Evidence or Testimony Regarding Alleged Bad Faith, Lack of Good Faith or Improper Claims Handling or Claim Practices of QBE or Its Representatives with Regard to this Claim or Any Other Claim (DE# 71), and to Preclude Evidence of, or References to, Other Claims Against QBE, including Affirmative Defenses used by QBE in other Lawsuits (DE# 72).  A hearing was held on all of these motions on October 15, 2010.  (DE# 142.)  After considering the written submissions, arguments of the parties at the hearing, and being otherwise independently informed about the law, the Court makes the following rulings.

Like all of this Court's rulings on the *in limine* motions, this ruling is a preliminary one and may, of course, be revisited by Chief U.S. District Judge Federico A. Moreno, who will be presiding over the trial, should the evidence at trial materially differ from the parties' predictions or if the factual and legal issues under consideration significantly change.

**I.   Bad Faith, Claims Handling, and Gary Fye (DE# 70; DE# 71)**

These two motions involve similar subject matter and were addressed by Plaintiff in a combined response (and subsequently by Defendant in a combined reply).  (DE# 101; DE# 119.)  Therefore, it is logical and more efficient to address them here together.

In its Motion regarding bad faith and claims handling practices, Defendant asserts that any evidence concerning these issues is inadmissible in a breach of contract dispute. (DE# 71.)  Defendant also argues, in its Motion To Exclude Testimony of Gary Fye, that Fye's testimony is inadmissible under Rule 402 of the Federal Rules of Evidence because the testimony is only relevant to a claim of bad faith under section 624.155, Florida Statutes, and not relevant to the instant claim, which is a claim of breach of contract to determine whether Plaintiff suffered covered damages under the insurance policy.  (DE# 70.)

Plaintiff believes that the claims handling procedures are relevant to the Defendant's determination of the estimates of loss and that the procedures could be relevant to the validity of Defendant's claims (in its affirmative defenses) of fraud, concealment and misrepresentation.  (DE# 101, p. 2.)  Similarly, Plaintiff contends that Fye can give probative testimony on the competence of Defendant's claims-handling procedures to refute what Plaintiff contends is Defendant's assertion that its evaluation alone is accurate.  (*Id.* at 4.)

Defendant's position is more persuasive and the case law supports Defendant's argument that evidence of an insurance company's claims handling procedures is irrelevant to the determination of coverage and damages.  *E.g.*, *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 703 (S.D. Fla. 2007).  These procedures are only relevant to a claim of bad faith.  *Kennedy v. Provident Life & Accident Ins. Co.*, No. 07-81218-CIV, 2009 WL 3048683, at *3 (S.D. Fla. Sept. 18, 2009) (citing *State Farm Fire & Cas. Ins. Co. v. Valido*, 662 So. 2d 1012, 1013 (Fla. 3d. DCA 1995)); *D'Aprile v. UNUM Life Ins.*

*Co. of Am.*, No. 2:09-cv-270-FtM-36SPC, 2010 WL 3340197, at *2 (M.D. Fla. Aug. 2010) (citing *Dennis v. Northwestern Mut. Life Ins. Co.*, No. 3:06-cv-43-J-20MCR, 2006 WL 1000308, at *2 (M.D. Fla. April 14, 2006)).

The only case Plaintiff cited directly in support of its opposition to Defendant's motion is *Coconut Key Homeowner's Association, Inc. v. Lexington Insurance Co.*, 649 F. Supp. 2d 1363 (S.D. Fla. 2009), where the Court held that an insurance company must prove "substantial prejudice" to avoid coverage due to the insured's failure to comply with post-loss conditions under a cooperation clause. *Id.* at 1369-1370. Plaintiff previously relied upon this same case and argument in support of its August 18, 2010, motion to compel production of evidence similar to that which Defendant now seeks to exclude (*i.e.,* Defendant's actual claims handling procedures and policies). In its initial order on that motion, the Court considered *Coconut Key* but noted that it was "difficult to see how QBE's claims handling practices would be relevant to" Plaintiff's instant claims. (DE# 110, p. 9.) In an abundance of caution, the Court ordered Defendant to produce these documents for an *in camera* inspection. After conducting its inspection, this Court determined these documents were not relevant to Plaintiff's claims and denied Plaintiff's motion. (DE# 121.)

At the hearing on this motion, Plaintiff's counsel conceded that "no doubt this is a contract case, not bad faith." Moreover, Plaintiff's counsel also conceded that he cannot introduce the evidence Defendant seeks to exclude with these motions directly in his case in chief. In a bid to persuade the Court to not grant QBE's motion, Plaintiff's counsel expressly agreed to not use Gary Fye, bad faith, or claims handling evidence in Royal Bahamian's case in chief. Plaintiff's counsel instead requested that the Court deny Defendant's motion without prejudice so that Plaintiff could use this evidence, if appropriate, on rebuttal. In effect, Royal Bahamian is seeking a potential safety valve and the chance to somehow pursue this evidence at trial. QBE opposed this proposal

3

and reiterated its position that it none of this evidence would become relevant in a breach of contract action.

The primary trial issues here are straightforward: whether Defendant withheld payment to the Plaintiff for covered damages caused by Hurricane Wilma and, if so, whether QBE proved its affirmative defenses. Evidence pertaining to any issue other than the ones at bar would be irrelevant and therefore inadmissible. *See* FED. R. EVID. 402.

Gary Fye is expected to provide "information regarding the fundumental [sic] purposes of insurance coverage and QBE's handling and supervision, and its actions to avoid fulfilling fundumental [sic] purposes of the insurance." (*See* Plaintiff's Rule 26(a)(1) Initial Disclosures, DE# 70-1.) This testimony would be relevant to the instant case only if it made it more or less probable that the Defendant failed to make the correct payments under the insurance policy or that Royal Bahamian violated its obligations under the policy. *See* FED. R. EVID. 401. Evidence pertaining to QBE's handling of the claim at issue, and indeed all other handling practices and claims, is irrelevant. (DE# 121.)

Mr. Fye makes several statements in his deposition that cover subject matter on which discovery was already denied by this Court. (DE# 121). Mr. Fye states: "I'm trying to limit my testimony here to the administration, the good claim handling issues that arise in this case." (DE# 70-2 at 4). Such testimony would only mirror the content of the irrelevant documents that Plaintiff previously sought, and is likewise irrelevant to the first-party claim of breach of contract.

In addition to being irrelevant, it is clear that there is a real danger that Mr. Fye's testimony will morph the proceeding into a not-yet-filed bad faith claim, thereby unfairly prejudicing Defendant. This is evidenced by his deposition testimony. (DE# 70-2, 3, 4, 5, 6). Although both Mr. Fye and Plaintiff acknowledge that this is not a bad faith case,

4

the transcript of his deposition demonstrates that, in reality, Mr. Fye is a bad faith expert (or a disguised bad faith expert). (DE# 70-2; DE# 101, p. 2.) Mr. Fye's opinions as to proper claims handling procedures are just as irrelevant to Plaintiff's breach of contract claims as Defendant's actual procedures. Additionally, all three trials in which Mr. Fye previously provided testimony pertaining to the proper administration of claims handling procedures were cases involving bad faith claims. (DE# 70-6.)

In sum, while the Court does not doubt the usefulness of Mr. Fye's testimony in a bad faith lawsuit, this is not a bad faith case. Although, an insurer's claims handling procedures, or other bad faith-related evidence may well be admissible and highly significant in a bad faith case, the Court agrees with Defendant that there is no conceivable scenario in which such evidence will become relevant in this breach of contract case. Therefore, Defendant's motions (DE# 70; DE# 71) are granted.[1]

## II. References to Other Claims and Affirmative Defenses (DE# 72)

In this motion, Defendant argues that any evidence regarding other claims made against it or its affirmative defenses in other cases is irrelevant, or, if not completely irrelevant, that its prejudicial value substantially outweighs its probative value, and should be excluded at trial. In response, Plaintiff argues that references to other actions against QBE and defenses used by Defendant in other cases are important to establish Defendant's *modus operandi* of consistently denying claims and alleging fraud as an affirmative defense. (DE# 100.) In fact, Royal Bahamian proffered that QBE asserted this defense in the majority of its Hurricane Wilma cases.

---

[1] As noted above, all of my rulings on motions *in limine* are preliminary and subject to change by Chief Judge Moreno. Consequently, in the extremely unlikely event that any of this evidence possibly becomes relevant to Plaintiff's rebuttal, Plaintiff may at that time raise the issue again with Chief Judge Moreno.

In general, Federal Rule of Evidence 404(b)[2] regulates the admission of other acts to show action in conformity therewith. In *U.S. v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000), the Eleventh Circuit explained that the admissibility of acts unrelated to the present litigation hinges on three factors: the evidence must (1) be relevant to one of the enumerated issues and not to the defendant's character; (2) the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and the evidence must satisfy Rule 403.

It is only logical that other Hurricane Wilma-related actions exist against Defendant. Defendant is a large insurer of property in South Florida, where Hurricane Wilma caused widespread damage. But, evidence of Defendant's claims handling practices in the other actions is not relevant to the factual issues in the instant action. *E.g., Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 703 (S.D. Fla. 2007).

Plaintiff's attempt to avoid the above analysis by specifically branding this evidence as being of Defendant's *modus operandi* (*i.e.* Defendants' purported use of fraud and misrepresentation as an affirmative defense when the submitted claim for damages is greater than the insurance company's own estimate) is strategically understandable but legally unpersuasive. (DE# 100 at 2.)

A *modus operandi* is a pattern of behavior so distinctive that it can reasonably only be attributed to a particular individual.[3] *See* BLACK'S LAW DICTIONARY 1026 (8th ed. 2004). *See also United States v. Williams*, 985 F.2d 634, 637 (1st Cir. 1993) (likening

---

[2]   FED. R. EVID. 404(b) states: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ."

[3]   A prime example of *modus operandi* can be found in the movie *Point Break*. In that movie, the bank robbers consistently wore masks of former U.S. presidents while committing robberies. Use of these specific types of masks is unique. Had the bank robbers, for instance, merely worn ski masks, then it would not have been unique enough to constitute a *modus operandi.*

*modus operandi* to a signature).  In practice, many insurance carriers assert fraud and misrepresentation as affirmative defenses in order to deny coverage, and this often involves differing ideas as to the proper amount of claimed damages.  *E.g., Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co.*, 649 F. Supp. 2d 1363 (S.D. Fla. 2009); *Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of N.Y.*, 600 F. Supp. 2d 1228 (S.D. Ala. 2009);  *Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312 (M.D. Fla. 2002).  Given the common nature of these defenses, their invocation cannot rightfully be considered a *modus operandi*.  Moreover, *modus operandi* is generally invoked where there is some mystery as to identity.  There is no dispute over identity in this case and therefore, even if the use of these affirmative defenses could be considered a *modus operandi*, it would be irrelevant in this case.  *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005) ("proof of a 'modus operandi' is only relevant when there is an issue regarding the defendant's identity").

In a different vein, there is also a real danger that if the Court were to allow Plaintiff free rein to inquire about prior claims and defenses, Defendant would be forced to retry all of these other claims in an effort to show why the facts in those particular cases supported Defendant's particular positions.  *See Burley v. Homeowners Warranty Corp.* 773 F. Supp. 844, 858 (S.D. Miss. 1990) ("Without question, if evidence of other claims were allowed by the court, there would be, in effect, a mini-trial on each such claim. That is wholly unacceptable where the only claims that are material are the claims of the plaintiffs in this litigation.  In sum, the admission of such evidence would be unduly time-consuming, unfairly prejudicial and unnecessarily confusing and will not be permitted").  If this outcome were to occur (which it wouldn't, because this Court cannot imagine the trial including a series of mini-trials on other unrelated cases to determine the viability of the affirmative defenses raised there), then any probative value for

Plaintiff would inevitably be substantially outweighed by the prejudice Defendant would face.

In addition, QBE would be entitled to introduce evidence from other claims where it did not assert the affirmative defenses. During the hearing, Royal Bahamian's counsel conceded that QBE should be entitled to do that if Plaintiff were able to introduce evidence of those other cases where QBE did, in fact, assert the defenses. Should that occur, there would be yet another series of mini-trials about QBE's decision to not raise these defenses in other cases.

Although Royal Bahamian will be foreclosed from introducing evidence of QBE's claims handling and litigation positions in other cases, it will be permitted to cross-examine QBE's experts about their involvement in other cases, as follows: Plaintiff shall be allowed at trial to ask Defendant's experts about (1) the number of prior cases in which he or she was retained as an expert by Defendant, (2) the percentage of his or her income received each year from work for the Defendant, and (3) specifically how many Hurricane Wilma claims for which he or she was retained by Defendant.[4]  *See Isola Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 08-21592-CIV-GRAHAM/TORRES (S.D. Fla. June 19, 2009).

This allowance will be reciprocal. Defendant shall likewise be allowed to ask the same questions to Plaintiff's witnesses (*e.g.*, for how many claims were you retained *by the firm representing* Plaintiff regarding Hurricane Wilma claims?). Plaintiff shall not be allowed to otherwise inquire into prior claims against Defendant or Defendant's affirmative defenses in other cases. Plaintiff is also cautioned that it should tread carefully during its inquiry into these areas so that it does not blur the line between the claims in this case and the claims made against Defendant in prior cases.

---

[4]   At the hearing, Defendant conceded that these questions were permissible and stated that it would not object to Plaintiff asking them.

Therefore, by way of summary, Defendant's motion will be granted, with the additional conditions outlined above concerning expert witness cross-examination.

### III. Conclusion

Defendant's motions relating to Gary Fye, bad faith, and claims handling and claims practices are granted. (DE# 70; DE# 71.) Defendant's motion to preclude evidence or reference to other claims against and affirmative defenses of Defendant is granted except to the extent that each side may question the other side's experts about their prior experience with the party or the party's counsel, as specifically delineated above. (DE# 72.)

DONE AND ORDERED, in Chambers, in Miami, Florida, this 25th day of October, 2010.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Federico A. Moreno
All counsel of record